UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER BUCKENBERGER                    CIVIL ACTION

VERSUS                                       NUMBER: 15-1785

GERALD J. NIELSEN, ET AL.                    SECTION: "H"(5)

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C.§636(b) and Local Rule 73.2(A), presently before the Court is the above-captioned 42 U.S.C. §1983 proceeding of Christopher Buckenberger, a prisoner housed at the Louisiana State Penitentiary ("LSP") in Angola, Louisiana.  (Rec. doc. 1).[1/] Named as Defendants in this proceeding are Gerald J. Nielsen, John D. Carter, and Keith M. Detweiler of the law firm of Nielsen, Carter & Treas in Metairie, Louisiana; Magistrate Judge Daniel M. Knowles, District Judge Martin L.C. Feldman, and District Judge Lance M. Africk of the United States District Court for the Eastern District of Louisiana; the unnamed Clerk/Deputy Clerks of the United States District Court for the Eastern District of Louisiana; Officer Haywood Jarrell of the Madisonville Police Department; St. Tammany Parish Sheriff Jack Strain; Michael Stephens, a private party; Deputy Futch of the St. Tammany Parish Jail; Judge Peter J. Garcia of the Twenty-Second Judicial District Court for the Parish of St. Tammany; and, other unidentified parties.  (Rec. doc. 1).  Given the official positions of the individuals who have been named as Defendants herein, the gatekeeping provisions of 28 U.S.C. §1915A are triggered here.  These provisions are:

---

[1/] Buckenberger's incarceration at LSP results from his March 15, 2007 conviction for attempted second degree murder, attempted forcible rape, second degree kidnapping, and public intimidation, for which he was ultimately sentenced to life imprisonment as an habitual felony offender.  *See Buckenberger v. Cain*, 471 Fed.Appx. 405 (5th Cir. 2012).

(a) **Screening.** – The Court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

   (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

   (2) seeks monetary relief from a defendant who is immune from such relief.

(c) **Definition.** – As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

Unfortunately, in this case, the statutory screening mandated by §1915A is made more difficult by the style of Plaintiff's pleading. Notwithstanding his cite to Rule 8(a) of the Federal Rules of Civil Procedures (rec. doc. 1, p. 8), Plaintiff's complaint does not contain a "short and plain statement of the claim showing that the pleader is entitled to relief" but is instead a rambling, disjointed, and often incomprehensible document. It otherwise runs afoul of the explicit instructions set forth in the standardized §1983 complaint form that Plaintiff used in this case. Those instructions are intended to further the goals of Rule 8(a) and avoid pleadings like Plaintiff's complaint. They had virtually no effect in this case.

On page two, for example, Plaintiff was instructed, in no uncertain terms, that "**THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS. ALSO, <u>DO NOT INCLUDE EXHIBITS</u>.**" (Rec. doc. 1, p. 2). Page four of the form also directs Plaintiff to state ". . . as briefly as possible the <u>facts</u> of . . . [his] case" and not to provide any legal arguments or to cite any cases or statutes. (*Id.* at p. 4). Despite those clear and

unambiguous instructions, Plaintiff attached to his complaint a confusing supporting memorandum that is replete with case citations – some of which are in error and do not stand for the asserted proposition – followed by various written opinions, orders, transcripts, and correspondences that were generated in cases that he has previously been involved in.  (*Id*. at pp. 6-68).  Also attached to Plaintiff's principal pleading in this case is another §1983 complaint form captioned for filing in the United States District Court for the Middle District of Louisiana wherein he complains of the adequacy of the medical care he has received at LSP for a heart condition.  (*Id.* at pp. 69-89).  Throughout Plaintiff's complaint, he cites the numbers of a handful of cases that he has previously pursued here that were presided over by the named Defendant judicial officers and were defended by the named Defendant attorneys.  As the handling and outcome of those cases appear to form the primary basis of Plaintiff's allegations in this matter, a summary of those prior proceedings is in order.

On September 7, 2006, Plaintiff initiated the §1983 proceeding in this court entitled *Buckenberger v. Strain, et al.*, No. 06-CV-5670 "I"(3) against Sheriff Strain, Warden Peachey, Deputy Longino, and other unidentified individuals.  Plaintiff, who was then a pre-trial detainee at the St. Tammany Parish Jail ("STPJ") in connection with the charges for which he was ultimately convicted, alleged that he had been denied adequate access to legal supplies and services to challenge the criminal proceedings then-pending against him and had been retaliated against for exercising his right of access to the courts.  He also complained of the adequacy of prisoner grievance procedures at STPJ, denial of free photocopies, and of being falsely arrested and imprisoned and maliciously prosecuted.  On September 27, 2006, Magistrate Judge Knowles issued a Report and Recommendation

recommending that the matter be dismissed as frivolous and for failing to state a claim upon which relief could be granted, primarily based upon the fact that Buckenberger had court-appointed counsel at the time, which adequately ensured his right of access to the courts. (Rec. doc. 9 in No. 06-CV-5670).  Plaintiff subsequently filed two sets of objections to the Report and Recommendation and, after considering those objections, Judge Africk adopted the Report and Recommendation as his opinion in the matter and judgment was entered dismissing the case with prejudice.  (Rec. docs. 17, 18 in No. 06-CV-5670).  No appeal of that judgment was taken.

While the Report and Recommendation that was issued in No. 06-CV-5670 was pending, on October 11, 2006, Plaintiff commenced the §1983 action entitled *Buckenberger v. Reed, et al.*, No. 06-CV-7393 "F"(3) against then District Attorney Walter Reed; Assistant District Attorneys Joseph Oubre and Scott Gardner; Robert Stamps, Ernest Barrows, and John Simmons, all employed or appointed by the Indigent Defender Board; and Haywood Jarrell ("Jarrell"), his arresting officer.  In that proceeding, Plaintiff complained of false arrest, the alleged use of excessive force against him, and various improprieties that occurred in the course of his state criminal prosecution, most notably the failure to afford him a timely probable-cause hearing.  Jarrell was represented in the case by attorneys Detweiler, Nielsen, and Carter of Nielsen, Carter & Treas.  On April 12, 2007, Magistrate Judge Knowles issued a Report and Recommendation recommending that Plaintiff's individual-capacity claims against Jarrell be allowed to proceed but that the remaining claims be dismissed with prejudice and for failure to state a claim.  (Rec. doc. 34 in No. 06-CV-7393).  That Report and Recommendation was later adopted by Judge Feldman.  (Rec. doc. 41 in No. 06-CV-7393).  Jarrell subsequently filed a motion for summary judgment

with respect to the individual-capacity claims remaining against him and on November 19, 2007, Magistrate Judge Knowles issued a second Report and Recommendation recommending that the motion be granted.  (Rec. doc. 121 in No. 06-CV-7393).   Over Plaintiff's objections, the District Judge adopted the Report and Recommendation as his own opinion and judgment was entered dismissing Plaintiff's claims against all of the named Defendants.  (Rec. docs. 128, 129 in No. 06-CV-7393).  Plaintiff timely appealed that dismissal to the United States Court of Appeals for the Fifth Circuit, No. 08-30152.  (Rec. doc. 132 in No. 06-CV-7393).

On appeal, the Fifth Circuit affirmed in part and reversed in part, remanding the matter for further proceedings on Plaintiff's individual-capacity claim against Jarrell for failing to secure a timely probable-cause determination.   *Buckenberger v. Reed*, 342 Fed.Appx. 58 (5th Cir. 2009).  Following the remand, Plaintiff was allowed to add the City of Madisonville as an additional defendant on a failure-to-train theory.  (Rec. doc. 171 in No. 06-CV-7393).   Around this time, and notwithstanding his zealous litigation efforts in No. 06-CV-7393, Plaintiff initiated yet another §1983 proceeding against Sheriff Strain and other unidentified individuals, *Buckenberger v. Strain, et al.*, No. 10-CV-0858 "I"(3), again complaining of the denial of a timely probable-cause determination following his arrest. On March 16, 2010, Magistrate Judge Knowles issued a Report and Recommendation recommending that that later-filed lawsuit be dismissed as malicious under 28 U.S.C. §§1915(e)(2)(B)(i) and 1915A(b)(1) as duplicative of the claims that had already been presented in No. 06-CV-7393.  (Rec. doc. 4 in No. 10-CV-0858).  Over Plaintiff's objections, on April 14, 2010, Judge Africk adopted the Report and Recommendation as his opinion in the matter and judgment was entered dismissing No. 10-CV-0858 as malicious but without

5

prejudice to Plaintiff pursuing the probable-cause determination claim in No. 06-CV-7393. (Rec. docs. 7, 8 in No. 10-CV-0858).  Despite filing three separate notices of appeal, on July 23, 2010, the Fifth Circuit dismissed Buckenberger's appeal for failure to prosecute.  (Rec. docs. 10, 11, 14, 19 in No. 10-CV-0858).   On April 28, 2014, almost four years later, Buckenberger filed a motion to reallot No. 10-CV-0858 to another section of the court, ". . . PREFERABLY TO: HON. GINGER BERRIGAN, . . ." based upon rambling allegations of "bench fraud" in the handling of that later-filed, duplicative suit.  (Rec. doc. 20 in No. 10-CV-0858). Plaintiff also filed a Rule 60(b) motion for relief from judgment in which he appears to have argued that the dismissal of the duplicative suit should not have counted as a "strike" under 28 U.S.C. §1915(g).  (Rec. doc. 21 in No. 10-CV-0858).   On May 8, 2014, Judge Africk dismissed those two motions for want of jurisdiction.  (Rec. doc. 22 in No. 10-CV-0858).

In the meantime, Jarrell and the City of Madisonville had filed a motion for summary judgment seeking the dismissal of the claims remaining in No. 06-CV-7393.  (Rec. doc. 193 in No. 06-CV-7393).  Over the following six months, Buckenberger filed various and sundry motions, including motions for documents and to compel, a motion to stay, and a motion to recuse, the latter motion being premised on Plaintiff's belief that Magistrate Judge Knowles should not have accepted the random reallotment of a separate *habeas* proceeding that Buckenberger filed here, *Buckenberger v. Cain*, No. 10-CV-1194 "A"(3).  (Rec. docs. 200, 201, 207, 213, 215 in No. 06-CV-7393).[2]   Plaintiff also filed an opposition to the Defendants' motion for summary judgment which he later supplemented.  (Rec. docs. 216, 227 in No. 06-CV-7393).   On November 30, 2010, Magistrate Judge Knowles issued a Report and

---

[2] Notably, one of the claims that was litigated in that *habeas* proceeding was Buckenberger's claim that his arrest was unlawful because he had not been afforded a timely probable-cause hearing.  (*See* rec. doc. 25, pp. 20-22 in No. 10-CV-1194).

Recommendation recommending that Defendants' motion for summary judgment be denied. (Rec. doc. 233 in No. 06-CV-7393). That Report and Recommendation was subsequently adopted by Judge Feldman. (Rec. doc. 238 in No. 06-CV-7393). On January 20, 2011, Magistrate Judge Knowles held a status conference with Plaintiff and defense counsel participating to determine whether the parties were willing to consent to proceed to trial under 28 U.S.C. §636(c). (Rec. doc. 245 in No. 06-CV-7393). Ultimately, Plaintiff declined to do so, based in part on the Magistrate Judge's use of his chambers letterhead to transmit the §636(c) consent form to him. (Rec. doc. 267 in No. 06-CV-7393).

Thereafter, an evidentiary hearing was held by Magistrate Judge Knowles on July 21, 2011 at which Plaintiff, Jarrell, and Captain Joseph Way appeared and testified. (Rec. doc. 282 in No. 06-CV-7393). A status conference via phone was then held on October 14, 2011 to discuss possible settlement of the matter. (Rec. doc. 287 in No. 06-CV-7393). Despite Plaintiff expressing a willingness to settle the case and even filing a Rule 69 motion for execution of process to enforce payment of monies, he later had second thoughts and rejected the Defendants' offer to compromise. (Rec. docs. 287, 290, 294 in No. 06-CV-7393). Plaintiff subsequently vacillated on that position but after the parties were unable to agree upon and execute a binding settlement agreement, on March 29, 2012, Magistrate Judge Knowles issued yet another Report and Recommendation recommending that Plaintiff's remaining claims against Jarrell and the City of Madisonville be dismissed with prejudice. (Rec. docs. 295, 296, 300, 301 in No. 06-CV-7393). Over Plaintiff's objections, on June 19, 2012, Judge Feldman adopted the Report and Recommendation as his own and judgment was entered dismissing Plaintiff's case. (Rec. docs. 302, 304, 306, 307 in No. 06-CV-7393). After Plaintiff's appeal of that judgment was twice dismissed by the Fifth Circuit

for failure to pay the appellate filing fee, Judge Feldman denied Plaintiff's motion for leave to appeal *in forma pauperis* as he had by that time acquired three strikes under §1915(g). (Rec. docs. 308, 311, 333, 338, 341 in No. 06-CV-7393).  Yet another notice of appeal that Plaintiff had filed was dismissed by the Fifth Circuit on March 19, 2014 for failure to pay the filing fee.  (Rec. docs. 335, 342 in No. 06-CV-7393).  Plaintiff's motions for relief from judgment and to reallot the case were denied as frivolous by Judge Feldman on June 27, 2014 and Plaintiff was prohibited from submitting any further filings as the judgment in the case had become final almost two years earlier.  (Rec. docs. 343, 344, 345 in No. 06-CV-7393).

By letter dated September 9, 2014, Buckenberger corresponded with the Fifth Circuit Clerk's Office inquiring as to the date for filing an appellate brief.  That correspondence was docketed in Fifth Circuit Case No. 14-30062, the number assigned to the most recent of the numerous notices of appeal that Buckenberger had filed in No. 06-CV-7393. By letter dated September 16, 2014, the Fifth Circuit Clerk's Office advised Plaintiff as follows:

> As this case was dismissed March 19, 2014, we are taking no action on your request.
>
> If you pay the full **$505** appellate filing fees to the district court, you may then file a motion to reopen with this court.  We will not act on a motion to reopen unless the default for which the case was dismissed has been remedied.

> (Rec. doc. 346
> in No. 06-CV-7393).

The following day, Buckenberger filed a document titled "Urges Reopen Mandate" in Fifth Circuit case No. 08-30152 which the Fifth Circuit Clerk's Office responded to by advising him that "[t]he court already has issued its final ruling and will not rule upon the

8

matter further."   Plaintiff then paid or caused to be paid the appellate filing fee on September 23, 2014.  (Entry between rec. docs. 345 and 346 in No. 06-CV-7393).  He then filed a motion to reopen in Fifth Circuit No. 14-30062 which the Fifth Circuit Clerk denied on October 1, 2014.  Buckenberger's motions for reconsideration of that order were subsequently denied by Judge Priscilla R. Owen of the Fifth Circuit on October 31, 2014 and by a panel composed of Judges Owen, Prado, and Graves on November 19, 2014.

Having unsuccessfully litigated the foregoing matters to their conclusion and obtaining results that are obviously not to his liking, Buckenberger has now chosen to sue the judicial officers who presided over those prior proceedings, the defense attorneys who defended No. 06-CV-7393, and others under §1983, seeking monetary, declaratory, and injunctive relief.  In his customary cryptic style of pleading, Plaintiff frames the claims for herein relief as follows:

### CLAIM ONE
_____

MAGISTRATE USDC DANIEL E. KNOWLES COMMITTED WRITTEN INTRINSIC FRAUD (U)PON THE HON. U.S. 5TH CIRCUIT COURT OF APPEALS 08-30152.  IN THE FOLLOWING (FORBIDDEN) WAY AS (VIOLATIONS) OF "NON DISCRETIONARY MANDATE FURTHER (VIOLATING) USDC CANNON ETHICS & ABA JUDICIAL CODES (AS) OFFICER OF THE COURT/S:

### CLAIM TWO
_____

USDC (MAG KNOWLES) USED-COMMITTED 'FORBID' INTRINSIC (BENCH FRAUDS) CASE 10-858 SHERIFF STRAIN CASE[G] DISMISSING 10-858 (WITHOUT PREJUDIVE) BY UNJUST USE – SAME – TO --- FRAUDULENTLY FORGE --- 3RD (STRIKE), AS (O)NLY DONE VIA VAIN RR/ORDER, F R A U D U L E N T L Y UNTENABLY PURPORTING – PRIOR – (2009) US 5TH CIR "REVERSAL" 'FAILS TO EXIST" THEREAFTER (2010) to FORGE 3RD STRIKE:[H]

CLAIM THREE
_____

> PLAINTIFF HERE HAS hitherto, current, future, SERIOUS
> 'MEDICAL' HEART CONDITION THAT . . . . consistently by
> medical symptoms (described) in related <u>motion/affidavit</u>
> <u>seeking counsel</u> annexed here, as medical condition that
> <u>(limited) plaintiff's legal efforts</u>, for the past 5½ months:

>> therefore plaintiff's INDEPENDENT SUIT here
>> <u>as it (consumed) entirety of past 5½  to 6</u>
>> <u>months(invariably) precludes</u>:

>>> completion legal research, drafting,
>>> for submission on <u>5/18/15</u> deadline

>>> (Rec. doc. 1, pp. 16, 18, 20).

Among the various instances of "intrinsic fraud" that are attributed to Magistrate Judge Knowles under the claim that Plaintiff labels as claim number one above are such trivialities as the Magistrate Judge's use of his personal letterhead to transmit a 28 U.S.C. §636(c) consent form to him which he believes was unduly coercive.  (Rec. do. 1, p. 17). Seizing upon a statement that appears in the Fifth Circuit's opinion remanding No. 06-CV-7393 for further proceedings that reads "[t]he magistrate judge determined that Buckenberger's guilty-plea convictions barred his claims for false arrest . . .," *Buckenberger*, 342 Fed.Appx. at 61, Plaintiff also suggests that Magistrate Judge Knowles presented incontrovertibly false information to the Fifth Circuit as he never pled guilty but was instead convicted following a jury trial.  (Rec. doc. 1, p. 16).  The quoted misstatement that appears in the Fifth Circuit's opinion, however, followed its earlier observation that "[a] jury convicted Buckenberger . . . *Buckenberger*, 342 Fed.Appx. at 60.  Magistrate Judge Knowles obviously had nothing whatsoever to do with the drafting and accuracy of the Fifth Circuit's *per curiam* opinion and in his Report and Recommendation that preceded it,

10

he correctly noted that "[o]n March 15, 2007, a jury trial was held and . . . [Buckenberger] was convicted on all charges."  (Rec. doc. 121, p. 4 in No. 06-CV-7393).

Plaintiff also accuses defense attorneys Detweiler, Nielsen, and Carter of engaging in "cabal-collusion-conspiracy" in an attempt to influence Magistrate Judge Knowles and Judge Feldman by forging and fabricating an affidavit after-the-fact.  (Rec. doc. 1, p. 17). Plaintiff's obvious confusion in that regard centers on a properly-executed affidavit that Jarrell signed on August 29, 2007 in support of his first motion for summary judgment. (Rec. doc. 86-2 in No. 06-CV-7393).  That affidavit, in turn, references as exhibits 1 and 2 a "Booking Information Sheet" and a "Statement of Miranda Rights," both of which are dated February 22, 2006.  (Rec. doc. 86-2, p. 3 in No. 06-CV-7393).  In connection with the preparation of the motion for summary judgment, Jarrell's counsel had obtained copies of the two exhibits approximately two months earlier, the correctness of which were certified by a Deputy Clerk of the Twenty-Second Judicial District Court on June 22, 2007.  (Rec. docs. 86-3, 86-4 in No. 06-CV-7393).  Photocopies of that same certification are appended not only to the exhibits referenced in Jarrell's affidavit but to the affidavit itself.  (Rec. docs. 86-2, p. 5; 86-3, p. 2; 86-4, p. 3 in No. 06-CV-7393).  A cursory reading of the exhibits attached to Jarrell's motion for summary judgment fails to reveal the existence of any forged documents.  The factual basis of Buckenberger's "intrinsic fraud" claim is thus incorrect.

In his second claim herein, Buckenberger further accuses Magistrate Judge Knowles of engaging in some form of "'forbid[den]' intrinsic (bench frauds)" by recommending the dismissal of No. 10-CV-0858 as malicious for containing claims duplicative of those which were already being litigated in No. 06-CV-7393, a dismissal that qualifies as a "strike" under

§1915(g).  (Rec. doc. 1, pp. 18-19).  As noted above, while No. 06-CV-7393 remained pending in this court, Buckenberger initiated suit No. 10-CV-0858, again complaining of the alleged lack of a timely probably-cause hearing.  In the Report and Recommendation that he issued in the latter case on March 16, 2010, Magistrate Judge Knowles accurately observed that ". . . plaintiff's claims regarding the purported failure to provide a timely probable cause determination currently remain pending . . ." in No. 06-CV-7393.  (Rec. doc. 4, p. 2 in No. 10-CV-0858).  On that basis, dismissal of the later-filed suit was correctly recommended under well-established Fifth Circuit precedent such as *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988).  (*Id.*).  Indeed, that claim was one of the two claims that were last to be dismissed in June of 2012.  (Rec. docs. 301, 306, 307 in No. 06-CV-7393). Although Buckenberger thrice appealed the dismissal of No. 10-CV-0858 to the Fifth Circuit, he later abandoned those available appellate remedies by failing to timely pay the required docketing fees.  (Rec. docs. 10, 11, 14, 19 in No. 10-CV-0858).  The instant civil rights lawsuit against Magistrate Judge Knowles is not the appropriate substitute for the appeal rights that Buckenberger voluntarily abandoned.

By virtue of Plaintiff's third claim herein, he appears to argue that a heart-related medical condition entitles him to some unquantified extension of time to further research, draft, and submit pleadings related to his allegations of "intrinsic bench/bar fraud."  (Rec. doc. 1, pp. 19-20).  Citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661 (1991), he seems to invite the "defendant(s)" to prove various factors respecting the validity of his arrest and initial detention.  (Rec. doc. 1, pp. 20-21).  The Court is directed to no authority warranting such a prospective, open-ended extension and the legality of

Plaintiff's arrest has already been litigated to his detriment on both civil rights and *habeas corpus* grounds.

Aside from the fact that Buckenberger's claims for relief lack factual support, to the extent that those claims can be deciphered at all, significant legal defenses preclude the continued prosecution of this suit.  First,  as respects the named Defendant judicial officers, they are federal officials acting pursuant to federal law and are not state actors acting under color of state law, necessary requirements to the maintenance of a lawsuit under §1983. *Lyons v. Sheetz*, 834 F.2d 493, 495 (5ᵗʰ Cir. 1987).  Moreover, Judges Feldman and Africk and Magistrate Judge Knowles are absolutely immune from suit here even if their acts are perceived by Plaintiff to have been done erroneously, maliciously, or in excess of their authority.  *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 1104-05 (1978); *Pierson v. Ray*, 386 U.S. 547, 553-54, 87 S.Ct. 1213, 1217-18 (1967); *Mays v. Sudderth*, 97 F.3d 107, 110-11 (5ᵗʰ Cir. 1996); *Graves v. Hampton*, 1 F.3d 315, 317 (5ᵗʰ Cir. 1993); *Lyons*, 834 F.2d at 495.  Rather, a judge will be subjected to liability only when he has acted in the "clear absence of all jurisdiction."  *Mays*, 97 F.3d at 111.

Based upon a review of Plaintiff's complaint, it is clear that the acts that he complains of all occurred in the Judges' official capacity in connection with cases that were properly pending before them.  Having considered the four factors set forth in *McAlester v. Brown*, 469 F.2d 1280, 1282 (5ᵗʰ Cir. 1972), it is clear that the named Defendant Judges are entitled to absolute judicial immunity here.  To the extent that Plaintiff was dissatisfied with the rulings that were made by the Judges in those prior cases, his recourse was to seek appellate review of the rulings, not to sue the Judges on civil-rights grounds.  *Boyd v. Vance*, No. 09-CV-7643, 2010 WL 235031 at *2 (E.D. La. Jan. 13, 2010).  Independent lawsuits

against presiding judges are not the appropriate vehicle for disgruntled litigants to obtain a reversal of adverse judgments. *Montesano v. New York*, No. 05-CV-9574, 05-CV-10624, 2006 WL 944285 at *4 (S.D.N.Y. Apr. 12, 2006)("[n]either damages, injunctive nor declaratory relief is available to be used as a vehicle for disgruntled litigants to reverse adverse judgments."); *see also Brandley v. Keeshan*, 64 F.3d 196, 2001-01 (5th Cir. 1995), *cert. denied*, 516 U.S. 1129, 116 S.Ct. 947 (1996); *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994); *Dayse v. Schuldt*, 894 F.2d 170, 172 (5th Cir. 1990); *Wightman v. Jones*, 809 F.Supp. 474 (N.D. Tex. 1992).

Turning to attorneys Nielsen, Carter, and Detweiler, as a general rule neither appointed nor retained counsel are considered to be acting under color of state law for purposes of §1983 liability. *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445 (1981); *Russell v. Millsap*, 781 F.2d 381, 383 (5th Cir. 1985). In *Tower v. Glover*, 467 U.S. 914, 919-20, 104 S.Ct. 2820, 2824 (1984), the Supreme Court held that the "under color of state law" requirement of §1983 is satisfied where counsel conspires with other traditional state actors. Whether the exception recognized in *Tower* applies *vis-à-vis* the named Defendant judicial officers is questionable here because, as noted above, they are federal and not state actors. Be that as it may, in the Fifth Circuit, "'[p]laintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient.'" *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991)(quoting *Lynch v. Cannatella*, 810 F.2d 1363, 1367-70 (5th Cir. 1987)). "'Mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C.A. §1983." *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986)(quoting *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir.

1982)).  Although Plaintiff generally alleges that the named Defendant attorneys conspired to deprive him of his constitutional rights, nowhere does he show that those attorneys and the other Defendants agreed to commit an illegal act.  *Dayse v. Schuldt*, 894 F.2d 170, 173 (5th Cir. 1990).  Without such a showing, the Defendant attorneys cannot be said to have acted under color of state law for purposes of §1983 liability.

With respect to Judge Garcia of the Twenty-Second Judicial District Court, he is scarcely mentioned in Plaintiff's supporting memorandum at all.  His name is mentioned first by Plaintiff in wholly conclusory allegations of a conspiracy among all of the named Defendants and then again later when Plaintiff challenges the Defendants to prove that Judge Garcia was neutral in setting his bond on February 27, 2006.  (Rec. doc. 1, pp. 13, 21). The insufficiency of Plaintiff's allegations notwithstanding, any §1983 claim against Judge Garcia in his individual capacity fails due to the absolute judicial immunity that he enjoys. *Stump*, 435 U.S. at 356, 98 S.Ct. at 1104-05; *Graves*, 1 F.3d at 317-318.  Furthermore, any such claim brought against the Judge in his official capacity fails for two additional reasons. First, the Judge is a state official and state officials acting in that capacity are not considered to be "persons" within the meaning of §1983.  *Washington v. Louisiana*, No. 09-CV-3186, 2009 WL 2015556 at *5 (E.D. La. June 30, 2009).  Second, because an official-capacity claim against the Judge is, in reality, a claim against the state itself, any such claim is barred by the Eleventh Amendment.  *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 188 (5th Cir. 1986); *Doris v. Van Davis*, No. 08-CV-4138, 2009 WL 382653 at *2 (E.D. La. Feb. 12, 2009).

Of the remaining specifically named Defendants – Officer Jarrell, Sheriff Strain, Michael Stephens, and Deputy Futch – Plaintiff's supporting memorandum makes mention of only two, Jarrell and Strain, and even then only in Plaintiff's version of what transpired in

15

the litigation of No. 06-CV-7393 or in the caption of the suit bearing No. 10-CV-0858.  (Rec. doc. 1, pp. 13, 14, 16, 18, 19).  As to these four individuals, suffice it to say that Plaintiff's complaint contains no overt acts on their part which occurred within one year of the date that Plaintiff tendered his lawsuit to the court for filing.  As such, any §1983 claims against them are clearly prescribed.  *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938 (1985); *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989); *Helton v. Clements*, 832 F.2d 332, 334-35 (5th Cir. 1987).

Aside from his clear, repeated invocation of §1983 as the basis for this suit, a recurring theme running throughout Buckenberger's complaint and supporting papers is his characterization of this case as an independent suit under Rule 60 to remedy what he serially refers to as "intrinsic bench/bar fraud."  Rule 60(d)(3) provides that the rule as a whole ". . . does not limit a court's power to . . . set aside a judgment for fraud upon the court."  "A motion under Rule 60(d)(3), however, requires a higher level of misconduct, such as 'an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'"  *Fife v. NFN Hensley*, 501 Fed.Appx. 332, 333 (5th Cir. 2012)(quoting *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir.), *cert. denied sub nom.* 493 U.S. 977, 110 S.Ct. 504 (1989).  Because Rule 60(d)(3) has no time limitation, "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute fraud on the court."  *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978).

To prevail in an independent action in equity under Rule 60(d)(3), the following elements must be proven:  1) a prior judgment which "in equity and good conscience" should not be enforced; 2) a meritorious claim in the underlying case; 3) fraud, accident or

mistake which prevented the party from obtaining the benefit of their claim; 4) the absence of fault or negligence on the part of the party; and, 5) the absence of an adequate remedy at law. *Addington v. Farmer's Elevator Mutual Ins. Co.*, 650 F.2d 663, 667-68 (5th Cir. Unit A), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 672 (1981).  Because notions of *res judicata* generally bar the relitigation of claims that actually were or should have been made earlier, *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005), *cert. denied*, 547 U.S. 1055, 126 S.Ct. 1662 (2006), "'[t]he independent action cannot be made a basis for the litigation of issues' adjudicated by the judgment now sought to be annulled." *Addington*, 650 F.2d at 668 (quoting *Bankers Mtg. Co. v. United States*, 423 F.2d 73, 79 (5th Cir.), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242 (1970)).  An independent action under Rule 60(d)(3) thus does not lie where "the plaintiff has alleged no facts indicating that the issues raised were not open to litigation in the former action or that he was denied a fair opportunity to make his claim or defense in that action." *Id.*  Indeed, "fraud upon the court" is not established where a plaintiff ". . . has alleged no scheme by which the integrity of the judicial process has been fraudulently subverted by a deliberately planned scheme in a manner involving 'far more than an injury to a single litigant.'" *Id.* (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245-46, 64 S.Ct. 997, 1002 (1944)).

Applying the above principles to the matter at hand, Plaintiff falls far short of establishing the elements necessary to the maintenance of a Rule 60(d)(3) independent action.  The Court is directed to no cogent reason why the judgment that was rendered in No. 06-CV-7393 should, "in equity and good conscience," be subject to attack here.  Nor is the Court directed to a meritorious claim in that prior suit that is deserving of the extraordinary remedy reserved to Rule 60(d)(3).  As shown in the procedural history set

forth above, Buckenberger has fully litigated his probable-cause determination claim on §1983 grounds via three separate actions over the course of over six years. He has also unsuccessfully litigated the claim on *habeas corpus* grounds in No. 10-CV-1194. Appellate remedies were available to Plaintiff in all of those proceedings. The instances of "fraud" that he details are unsupported by actual facts. Even if that were not the case, he points to no scheme by which the integrity of the judicial process as a whole has been fraudulently subverted as opposed to a plot directed against a single litigant like himself. *Addington*, 650 F.2d at 668. Rule 60(d)(3) affords Buckenberger no valid avenue for relief.

Finally, consistent with the *modus operandi* that he has exhibited in prior cases that he has pursued in this forum, Buckenberger has inundated the Court, either contemporaneously with the submission of his complaint or since, with a wide range of motions, including convoluted motions for an extension of time, to supplement and to amend, to recuse, and to appoint counsel. (Rec. docs. 13-8, 6-3). The motions for extension of time and to supplement/amend are simply bad-faith attempts to prolong this suit, which is nothing more than an attempt to relitigate non-meritorious claims by suing all of the judicial officers, attorneys, and others involved in those prior proceedings on civil rights grounds. *Lyons*, 834 F.2d at 495. The appointment of counsel is simply not warranted to further that frivolous pursuit. *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982). Lastly, to the extent that Plaintiff's motion to recuse the undersigned can be deciphered at all, it is equally unavailing. He points to no facts that were learned by the undersigned "extrajudicially" as opposed to from a simple review of Plaintiff's prior cases, *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 81-81 (5th Cir. 2011), and an objective person who was versed in the circumstances presented would harbor no doubts as to the partiality of all the

District and Magistrate Judges of this Court.  *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999); *Trevino v. Johnson* 168 F.3d 173, 178 (5th Cir. 1999).  Buckenberger's obvious dissatisfaction with prior rulings does not constitute grounds for recusal.  *United States v. Landerman*, 109 F.3d 1053, 1066 (5th Cir. 1997).

### <u>RECOMMENDATION</u>

For the foregoing reasons, it is recommended that Plaintiff's pending motions be denied and that his suit be dismissed with prejudice pursuant to 28 U.S.C. §1915A(b).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this __8th__ day of _____July_____, 2015.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

19